UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21654-CIV-KING

VIRENDRA RAJPUT, a/k/a VEDANT
RAJPUT; and MANSINGH RAJPUT,

    Plaintiffs,

v.

CITY TRADING, LLC, a Florida company;
CHAND REALTY LLC, a Florida company;
and CHAND SAYED MASOOD, an
individual,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, filed on September 9, 2010. (DE #24). Plaintiffs responded on September 27, 2010 (DE # 25), and Defendants replied on October 4, 2010. (DE #27).

### I.   BACKGROUND

Plaintiffs filed the Original Complaint on May 21, 2010, and asserted claims for unjust enrichment and for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq* ("RICO"). Plaintiffs' claims center around a massive fraud allegedly perpetrated in India. *Id.* According to Plaintiffs, it began when the Masood family, including Defendant Chand Masood, formed the City Group Companies in India. *Id.*, ¶13. The City Group Companies offered investment opportunities to the public, promising returns as high as forty-eight percent. *Id.*, ¶19. Several thousand people worldwide invested in the

City Group investment schemes, which required investors to pay a lump sum initially and then promised fixed monthly payments back to the investors over a period of five years. *Id.*

But according to Plaintiffs, the promises made by the City Group Companies were fraudulent. *Id.*, ¶24. Plaintiffs claim that "the City Group Companies had no intent to make the payments to investors as promised. Instead, the City Group Companies converted and embezzled the money from the investors . . . for the benefit of the Masood family." *Id.* Indeed, after one to two years, checks from the City Group Companies began bouncing and ultimately stopped coming altogether. *Id.*, ¶26. Plaintiffs allege that the Masood family kept the money for themselves, and the Economic Offences Wing of the Mumbai police is now investigating the alleged fraud. *Id.*, ¶¶26–7.

Plaintiffs Vedant Rajput and Mansingh Rajput both invested with two City Group Companies, City Realcom and City Limouzines. *Id.*, ¶¶22–3. Plaintiff Vedant Rajput invested a total of $284,550 on September 1, 2008 and September 4, 2008. *Id.*, ¶22. He was promised twelve monthly payments totaling $1,125,600 over the next five years. *Id.* Over the first eleven months, Plaintiff Vedant Rajput received a total of $198,000 in payments from the City Group Companies. *Id.*, ¶25. On August 11, 2009, the checks began bouncing and then stopped coming. *Id.*, ¶26. Plaintiff Vedant Rajput is still owed $927,600. *Id.*

Plaintiff Mansingh Rajput invested a total of $91,400 with City Realcom and City Limouzines over a period of two years.[1] *Id.*, ¶23. He was promised monthly payments of

---

[1] Plaintiff Mansingh Rajput made thirty-five investments with City Realcom and City Limouzines on the following dates: May 9, 2007; July 31, 2007; January 28, 2008; June 20, 2008; July 7, 2008; July 25, 2008; August 7, 2008; September 9, 2008, September 10, 2008; September 24, 2008; October 24, 2008; November 4, 2008;

approximately $6,000 for a period of five years. *Id.* Plaintiff Mansingh Rajput received $46,480 in payments from the City Group Companies, but is still owed $333,319. *Id.*, ¶7.

Defendants were not involved in the original investment phase of this alleged fraudulent scheme; instead, their role was to hide the wrongfully-obtained funds. *Id.*, ¶29. To accomplish this, Plaintiffs claim that Defendant Chand Masood moved to Florida to open Defendant companies City Trading, LLC and Chand Realty, LLC. *Id.*, ¶¶29–31. Plaintiffs allege that City Trading and Chand Realty had no legitimate customers, and instead engaged in various sham transactions to launder the money stolen from investors in India. *Id.*, ¶¶32–41.

For example, Plaintiffs allege that City Trading purchased 100 rugs from India to make it appear that the company was selling rugs, "but in the last five years, not one rug was sold." *Id.*, ¶32. Plaintiffs allege that Defendant Chand Masood used converted funds to buy real estate, some of which she then quitclaimed to Chand Realty. *Id.*, ¶¶34–6. In addition, some of the money was allegedly wired directly to Defendant Masood and deposited into City Trading accounts. *Id.*, ¶37. Finally, Plaintiffs allege that the money fraudulently obtained from the City Group Companies' investors was also laundered through City Trading by means of fake diamond exports. *Id.*, ¶¶38–41. Plaintiffs claim that City Limouzines and City Realcom pretended to buy diamonds from diamond merchants in India, which were reflected in fake invoices. *Id.*, ¶38. The Indian City Group Companies then gave cash obtained from the investors to intermediaries, or "hawala persons," who found diamond

---

November 19, 2008, January 17, 2009, and March 25, 2009. (DE #1, ¶23).

traders around the world to pretend to purchase the diamonds from the City Group Companies. *Id.* The diamond traders then returned the now "clean" money to the City Group Companies purportedly in exchange for the (nonexistent) diamonds. *Id.* Each person or entity would take a fee from the cash it received as compensation for carrying out the respective sham transactions. *Id.*

Defendants moved to dismiss the Complaint for improper venue and failure to state a claim upon which relief can be granted. (DE #9). The Court found that the Complaint was "a series of conclusory allegations and speculative hearsay assertions reflecting allegations against Indian non-parties," and granted the Motion to Dismiss without prejudice. *Id.* at 2. Plaintiffs filed the First Amended Complaint on August 23, 2010 (DE #22), and Defendants responded by filing the Motion to Dismiss that is now before the Court. (DE #24). Review of the First Amended Complaint reveals that it is largely the same as the original Complaint, and the defects in the original Complaint have not been remedied.

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This plausibility

4

requirement outlined by the Supreme Court "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Thus, courts determining the sufficiency of a complaint engage in a two-pronged analysis: "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).

## III. ANALYSIS

Aside from rearranging some of the paragraphs, the First Amended Complaint is nearly the same as the original Complaint. The First Amended Complaint contains a handful of new allegations relating to the alleged fake diamond sales, including: two paragraphs summarizing the diamond sales scheme (DE #23, ¶¶41, 42); a flowchart illustrating that summary, *id.* at 15; two footnotes noting money transfers to City Trading and Chand Masood, *id.* at 15, n.1–2; Foreign Inward Remittance Certificates showing funds wired by

diamond merchants to City Limouzines in India, *id.*, ¶42(b), DE #23(15); and an email from an Indian bank to City Limouzines regarding "discrepancies" relating to certain bank transactions. (DE #23, ¶43). Plaintiffs argue that they have "included additional details, specifics and facts underlying their claims against Defendants." (DE #25 at 2). While Plaintiffs have added material to the First Amended Complaint, as explained below, these new allegations are of the same conclusory nature as those contained in the original Complaint.

### A. RICO Claims

Plaintiffs assert claims under three sections of RICO. Section 1962(a) prohibits the use or investment of "income derived . . . from a pattern of racketeering activity" in an enterprise affecting interstate or foreign commerce. 18 U.S.C. §1962(a). Section 1962(c) proscribes a person "employed by or associated with" an enterprise engaged in or affecting interstate commerce from conducting or participating in the "conduct of the enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c). Section 1962(d) provides that it is unlawful to conspire to violate the other provisions of Section 1962. 18 U.S.C. §1962(d).

#### 1. The "Pattern of Racketeering Activity" Element of Section 1962(a) and (c)

Two of Plaintiffs' RICO claims have as an element "a pattern of racketeering activity." "Racketeering activity" is defined as engaging in a variety of illegal acts, which include, among other things, money laundering, mail fraud, and visa fraud. 18 U.S.C. §1961(1). To satisfy the "pattern of racketeering" element, a plaintiff must allege that: (1)

6

defendants committed two or more predicate acts within a ten-year time period; (2) the predicate acts are related; and (3) the predicate acts amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 237–40 (1989); *Jackson v. Bellsouth Tel., Inc.*, 181 F.Supp. 2d 1345, 1357 (S.D. Fla. 2001). Here, plaintiffs have failed to meet this requirement because they have failed to adequately plead two or more predicate acts.

Plaintiffs have alleged six predicate acts: money laundering in violation of 18 U.S.C. §1956; transportation of money obtained by conversion or fraud, in violation of 18 U.S.C. §2314; sale or receipt of money obtained by conversion or fraud, in violation of 18 U.S.C. §2315; engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §1957; travel in interstate and foreign commerce in aid of racketeering enterprises, in violation of 18 U.S.C. §1952; and fraud in the procurement of a visa, in violation of 18 U.S.C. §1546. (DE #23, ¶58(a)–(f)). All of these claims, with the exception of fraud in the procurement of a visa, require Plaintiffs to plead that the transferred money was at least related to some form of unlawful activity.[2] The only underlying unlawful

---

[2] The federal money laundering statute requires that "the property involved in a financial transaction represents the proceeds of some form of unlawful activity." 18 U.S.C. §1956(a)(1). To establish a violation of Section 2314, a plaintiff must plead that the defendant transported money "knowing the same to have been stolen, converted or taken by fraud." 18 U.S.C. §2314. The same "stolen, converted or taken by fraud" language is employed in Section 2315, which proscribes the sale or receipt of stolen goods, securities, moneys or fraudulent State tax stamps. 18 U.S.C. §2315. An element of Section 1957, titled "Engaging in monetary transactions in property derived from specified unlawful activity," is that the subject matter of a monetary transaction be "criminally derived property." 18 U.S.C. §1957(a). Finally, to plead interstate or foreign travel or transportation in aid of racketeering enterprises, a plaintiff must plead that the defendant traveled with intent to "distribute the proceeds of any unlawful activity . . . or

7

activity pleaded by Plaintiffs is the fraud allegedly perpetrated by the City Trading Companies in India. (DE #23). Thus, Plaintiffs have only stated their RICO claims if they have pled that the money transferred from the City Trading Companies to the Defendants constituted proceeds of the fraud in India.

However, the First Amended Complaint does not establish a sufficient connection between the fraud in India and the money received by Defendants in Florida. With respect to the newly-added allegations regarding fake diamond sales, Plaintiffs point to four wires to Defendant City Trading and a commission paid to Defendant Chand Masood. (DE #23, at 15, n.1, 2). Plaintiffs claim these funds were transferred as part of the diamond scheme, and include two new paragraphs and a flowchart explaining how the system of fake diamond sales worked. *Id.*, ¶¶40–1, p.14. However, these additions suffer from the same problems as the original Complaint—they are conclusory allegations that the diamond sales were "fake" without any facts to support that conclusion. *See, e.g., id.*, ¶41 ("[T]he City Group Companies pretended to purchase diamonds..."); *id.* ("The merchants prepared fake invoices..."); *Id.* at 15, n.2 ("Defendant Chand Masood received "more than $2.7 million in 2008 in wire transfers in connection with the laundering of the money converted from Plaintiffs and others."); *id.*, ¶44 ("There is no evidence of diamonds ever being exported, just falsified paperwork to show diamonds sent to City Trading."). Plaintiffs also attached "copies of some of the fake invoices" but again do not support their conclusion that the

---

promote, manage, establish, carry on . . . any unlawful activity." 18 U.S.C. §1952.

invoices are fake. *See id.*; DE #23(14).

The First Amended Complaint also contains similarly conclusory allegations that were previously dismissed in the original Complaint, but that remain unchanged. For example, Plaintiffs allege that Defendant "City Trading operated on embezzled funds," *id.* at ¶46, that Defendant Masood bought real property "with converted funds," *id.* at ¶49, and that Chand Realty "operates using money converted from investors." *Id.* In support of their claim that Defendant Masood fraudulently obtained a visa to work in the United States, Plaintiffs state only that she knowingly "used. . . possessed, obtained, accepted or received such visa, knowing it to be falsely made or to have been procured by means of a false claim or statement or to have been unlawfully obtained." *Id.*, ¶58(f). Plaintiffs do not allege *how* the procurement of the visa was fraudulent, i.e., whether the visa was falsely made, procured by means of a false claim, or otherwise unlawfully obtained.[3]

Contrary to Plaintiffs' argument, these allegations are conclusions. Plaintiff offers no facts supporting its conclusions that the funds in question were "converted" or "embezzled," or that the diamond sales were "fake." These statements are conclusory just as the allegations deemed insufficient in *Iqbal* were conclusory. In that case, a Muslim Pakistani

---

[3]Plaintiffs allege that Chand Masood entered the United States on a visa requiring her to be entering the country for the purpose of providing services to the same employer as before coming to the United States. (DE #23, ¶34). They allege that Defendant Masood violated that visa by failing to provide services to City Trading. *Id.*, ¶35. However, these allegations as to Defendant Masood's conduct after entering the United States have no bearing on whether she procured the visa fraudulently.

arrested and detained after the September 11, 2001 terrorist attacks sued a number of federal officials, including former United States Attorney General John Aschcroft and Robert Mueller, the Director of the FBI. 129 S.Ct. at 1942. He claimed he was detained under excessively harsh conditions "as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest." *Id.* at 1951. He further alleged that Ashcroft was the "principal architect" of the policy, and that Mueller was "instrumental" in its adoption and execution. *Id.* The Supreme Court held that these allegations should be disregarded as conclusory. *Id.* Plaintiffs' allegations that the diamond sales and the related paperwork were "fake," and that the transferred funds were "embezzled" and "converted" are conclusory in the same way that Iqbal's allegations that Ashcroft was the "principal architect" and Mueller was "instrumental" were conclusory. They are simply unsupported statements of Plaintiffs' belief as to the origin of the funds. Without some facts supporting that belief, Plaintiffs have "not nudged their claims across the line from conceivable to plausible." *See Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007).

### 2. Conspiracy under Section 1962(d)

Plaintiffs have also failed to state a claim for a conspiracy to commit a substantive RICO violation. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (quoting *United*

*States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992)). "The RICO agreement need not be established by direct evidence; it may be inferred from the conduct of the participants." *Id.* (citing *Church*, 955 F.2d at 695).

Here, Plaintiffs' only allegation of any agreement is a recitation of the elements of a RICO conspiracy: "Defendants have unlawfully, knowingly, willfully, combined, conspired, confederated, agreed and reached an understanding . . . to violate 18 U.S.C. §1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of the City Group Enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce." (DE #23, ¶64). This is not enough to satisfy the *Twombly* standard. *See Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (holding allegations that "defendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy" insufficient under *Twombly* and *Iqbal*).

Plaintiffs have also failed to allege facts supporting an inference of an agreement to commit RICO violations. Disregarding the conclusory allegations noted above, Plaintiffs' remaining allegations state: Plaintiffs invested in a business venture in India, they did not recoup their investments, the companies in India are affiliated with companies in Florida, and the Indian companies have sent money to their Florida affiliates. Even if the Indian City Trading Companies engaged in wrongdoing in India, the "obvious alternate explanation" to Plaintiffs' claims of a conspiracy is that the City Trading Companies in India and the

11

Defendants were affiliates engaged in ordinary business transactions. *See Twombly*, 550 U.S. at 568. As explained above, nothing in the First Amended Complaint ties the funds sent to Defendants by the City Trading Companies to the alleged fraud in India. Mere affiliation between the Defendants and the Indian companies is not enough to support a RICO conspiracy claim.

## B. Unjust Enrichment Claim

The purpose of the doctrine of unjust enrichment is "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. 1st DCA 2009). To state a claim for unjust enrichment, a plaintiff must plead that: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.*; *see also Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).

Here, Plaintiffs have not alleged that they conferred a benefit on the Defendants. Plaintiffs had no direct relationship with Defendants, and as explained above, the First Amended Complaint does not tie the funds received by Defendants to the funds invested in India by Plaintiffs. Plaintiffs rely on *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003), for their argument that unjust enrichment can be the basis for recovery

where "Defendants gave no consideration for the tainted funds used to purchase the [property] and have been unjustly enriched by the use of these funds." *Id.* at 890. However, Plaintiffs have not sufficiently pled that the funds at issue were "tainted." Accordingly, Plaintiffs' claim for unjust enrichment must be dismissed.

### C. Venue

Defendants argue that the entire First Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. (DE #24 at 12). The argument is based on a forum selection clause in the Investment Contracts Plaintiffs signed upon investing with the City Trading Companies in India. *Id.* The forum selection clause states that if any dispute arises under the contract, "the competent court at Mumbai shall have exclusive jurisdiction." (DE #23(3)). Defendants argue that this clause requires that Plaintiffs' claims be litigated in Mumbai, India, if at all. (DE #24 at 12–4). However, Defendants admit that they are not parties to the Investment Contracts. *Id.* at 14. Accordingly, Plaintiffs did not agree to litigate any claims against these Defendants exclusively in Mumbai, India. Dismissal for improper venue on this ground is improper.

## IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DE #24) is hereby **GRANTED, with prejudice.** The Clerk of Court **SHALL CLOSE** this case.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 25th day of October, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:
**Counsel for Plaintiff**

**Juliet Arlene Markowitz**
Tatro Tekosky Sadwick LLP
333 S Grand Avenue
Suite 4270
Los Angeles, CA 90071
213-225-7151
Email: jmarkowitz@ttsmlaw.com
*PRO HAC VICE*

**Rene Pierre Tatro**
Tatro Tekosky Sadwick LLP
333 S Grand Avenue
Suite 4270
Los Angeles, CA 90071
213-225-7151
Email: renetatro@ttsmlaw.com
*PRO HAC VICE*

**John Patrick Marino**
Fowler White Boggs
50 N Laura Street
Suite 2800
Jacksonville, FL 32202
904-598-3100
Fax: 598-3131
Email: jmarino@fowlerwhite.com

*<u>Counsel for Defendant</u>*

**Steven Robert Kozlowski**
Kozlowski Law Firm PA
1111 Lincoln Road
Suite 400
Miami Beach, FL 33139
305-673-8988
Fax: 673-8668
Email: steven@klfpa.com